BUSH *v.* THE STATE (two cases).

Nos. 7435, 7436. April 15, 1930.

*H. A. Wilkinson,* for plaintiff in error.

*B. T. Castellow, solicitor-general,* and *Bond Almand,* contra.

RUSSELL, C. J. Frank Bush was convicted in the superior court of Terrell County upon two indictments charging him with murder, the jury recommending in each case that he be confined in the penitentiary for life. He made a motion for a new trial in each case. Both motions were overruled, and the present writs of error challenge those judgments. There is no exception to the charge of the court, and no complaint as to any ruling made by the judge during the course of the trial. The motions for a new trial, being based solely upon the general grounds, present the single question as to whether the evidence was sufficient to authorize the jury to find the defendant guilty. In one indictment the accused is charged with having killed Ollie Bush, or Moreland, and in the other with the murder of Wiley Wiggins. Wiley Wiggins and Ollie Moreland were evidently shot to death at the same time. Within a very short time after the killing their bodies were found in close proximity. Ollie was already dead. Wiggins, though still breathing, expired shortly after witnesses came upon the scene. The convic-

tion of the accused, thus doubly indicted for murder, rests solely upon circumstantial evidence; and in the absence of any complaint it must be assumed that the trial judge correctly charged the jury that in the circumstances the evidence must be such as not only to carry conviction of the guilt of the defendant but must be of sufficient strength to exclude every other reasonable hypothesis save that of the guilt of the defendant. The record discloses the following facts. Frank Bush, the defendant, was living in the town of Plains in Sumter county, and had been intending for more than a month to marry Ollie Moreland, who lived at Parrott. On Sunday, having borrowed a car from Arthur Chappell, and accompanied by his cousin, Roy Hill, the defendant went to the town of Parrott in Terrell County, and at a late hour Sunday night was married to Ollie Moreland. According to the testimony the defendant, Frank Bush, was drinking heavily. Frank Bush is a young negro boy. The bride was a woman of mature years, who had been married, according to the testimony, at least once prior to the nuptials of this Sunday night. The only witness who testified to her character swore that it was bad. For several months Wiley Wiggins, who was also a young negro about the same age as Frank Bush, the accused, had been living alone in the house with Ollie Moreland. It appears that immediately after the performance of the marriage ceremony, after a gathering at the house of Ethel Williams, the bride, in company with Aggie Collier, a female friend, started on foot to her home, saying she had to work the next day. The bridegroom and Wiley Wiggins rode together in the automobile in which the former had come from Plains. The testimony does not disclose very clearly how or when the defendant came in contact with his new-made wife and the deceased Wiley Wiggins, prior to the killing, except that her companion testified that Ollie Bush started out in search of her husband, Frank Bush, and said she was going to bring him home. Several witnesses testified to seeing the accused and Wiley Wiggins together near and in the neighborhood of Ethel Williams's house after Ollie and Aggie Collier had gone, but no witness testified to the actual rencounter of the defendant and the two deceased persons. J. O. Cannon testified that he heard three shots, and that he went out on his porch and the shots came from the direction of Ethel Williams's house, and that though it was not quite daylight he saw a negro man pass up an alley lead-

ing from the direction of the shots and shortly return, and on the return trip he heard the man say, "I got them. I know I got them. I got them both." This witness telephoned for officers, and upon going with them the party found Wiggins in the last throes of death and Ollie with her head resting on one of his arms, already dead, and near by they found a 32-calibre pistol containing one empty shell and one loaded cartridge with four empty chambers. Another witness testified to having heard shots in that direction at about the same period of time, though he heard four shots. Wiley Wiggins received only one wound, the bullet entering the mouth and ranging downward, splitting his tongue, then passing through the neck or backbone, breaking his neck. His tongue and mouth were powder-burned. The woman was shot three times, once in the back of the arm, which followed the bone of the arm, another which went into the back of the head, and another in the side of her thigh, and which also buried itself in the flesh. Quite a number of negroes were arrested, who were afterwards discharged. About an hour after the discovery of the bodies the accused was discovered coming out of a privy behind Will Moreland's house near the place the bodies were found, and he was arrested. He claimed to have no knowledge as to the death of his wife and Wiggins, and according to the testimony of the sheriff was still very drunk. At the committal trial the defendant said that Wiggins was shooting at his wife, and that he shot to protect his wife. In his statement to the jury the defendant said that the statement he made at the committal trial was a lie, and stated in substance that he heard the shooting, but was drunk at the time and paid no attention; that he and Wiggins had left in the car to overtake Ollie, and after overtaking her he suggested they return, and he and Wiggins did return to the house of Ethel Williams, and both went in; that Wiggins went out of the house, and in a few minutes he heard the shots, and then Ethel Williams made him leave her house, and he went out to the privy and went to sleep, and when he woke up the sun was shining and when he came out and saw the crowd he did not know what had happened, and was arrested by the sheriff. A witness for the State, Will Reddick, testified that on the day that the bodies were found he heard the accused tell Arthur Chappell to go look under Will Moreland's house and find his pistol. Arthur Chappell denied that the defendant had ever made such a statement to him,

or that he was in Parrott the day of the killing; and a number of witnesses were introduced by the State, contradicting his testimony that he was not in Parrott, and they testified positively, in response to his denial, that he was in Parrott that day and was there at the time that the defendant was in the guard-house, though no other witness claimed to have heard the statement attributed to the accused by Reddick.

After a careful reading and rereading of the record in this case, I am compelled to say that the case is a most mysterious one; but after all, as said by Chief Justice Bleckley, the jury is the best doctor of doubt, and we can not say that the testimony of the witness Cannon is not more commanding and controlling than any theory that can possibly be suggested as compatible with the theory of the defendant's innocence. Coupled with this is one of the statements of the defendant at the trial, that "I took a whole lot from that same man [Wiggins] that night, because he had his pistol in his hand all the time, and I didn't say nothing to him." It is possible that the accused found Wiggins in the act of sexual intercourse with his former mistress, if indeed he did the killing; but this theory can not be indulged, because it is entirely unsupported by the evidence of any witness, and is not even sanctioned by the defendant's statement in his own behalf. Though the circumstances in proof are slight, they are sufficient, in our opinion, to authorize the verdicts returned by the jury. And the verdicts being approved by the judge who saw and heard all the witnesses and observed their motive and demeanor, this court can not say that he erred in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*